IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **RASHEEN JOHNSON**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Civil No.  **08-730-JPG** |
| | ) | |
| **HARRY G. LAPPIN, et al.**, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**PROUD, Magistrate Judge:**

This Report and Recommendation regarding the defendants' motions for summary judgment (Docs. 33 and 40) is respectfully submitted to United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c).

Plaintiff Rasheen Johnson is in the custody of the U.S. Bureau of Prisons, housed at all relevant times at the Federal Correctional Institution in Greenville, Illinois ("FCI-Greenville"). Plaintiff brings this action for deprivations of his constitutional rights pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).[1]  Plaintiff's amended complaint (Doc. 31) alleges that between July 29 and August 3, 2006, he was placed in a "dry cell," and thereafter placed in solitary confinement ("the SHU") and subjected to conditions of confinement constituting cruel and unusual punishment in violation of the Eighth Amendment. Plaintiff claims that his placement and in those cells was in retaliation for having filed suit

---

[1]*Bivens* is the "federal analog" to lawsuits brought against state officials under 42 U.S.C. § 1983.  *Hartman v. Moore,* 547 U.S. 250, 254 n. 2 (2006).

against defendants Harry G. Lappin, C/O Petty, M. Gelios, D. Braning[2] and Sara Revell in *Johnson v. Lappin*, Case No. 05-900-MJR (S.D.Ill. filed Dec. 22, 2005, judgment for defendants Jan. 29, 2009, appeal dismissed July 2, 2009)[3] , thereby violating the First Amendment.

Plaintiff takes particular issue with being in the "dry cell" without clothing, bedding or personal hygiene items, and being in the SHU unit without telephone and visitation privileges. Plaintiff specifies that defendant Petty threatened, "I told you we gone [sic] get you," and then proceeded to remove all clothing items, hygiene products and personal items from the cell. Defendant Braning allegedly refused to replace clothing items during the clothing exchange, denied plaintiff adequate cold weather apparel, "and verbally threatened" plaintiff. Plaintiff filed grievances in an attempt to remedy the situation, but then defendant Gelios allegedly threatened plaintiff with more abuse if he did not stop "filing." Also, "Officer's [sic] in the SHU" allegedly did not properly process plaintiff's personal and legal mail. (Doc. 31.)[4]

All defendants– Lappin, Revell, Petty, Gelios, Braning and Harmon– are before the Court seeking dismissal of both the Eighth Amendment "conditions of confinement" claims and the First Amendment "retaliation" claims, based on plaintiff's failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a).

Plaintiff, in essence, counters that his claims were presented in the BP-9 facility

---

[2]"D. Baning" is named as a defendant, but that defendant's last name is actually "Braning." This Court will utilize the correct spelling, "Braning."

[3]Captain Harmon is the only defendant in this action who was not named in the 2005 action.

[4]For purposes of the subject motion regarding the exhaustion of administrative remedies, the Court will generously construe the amended complaint and discuss all possible claims. Unlike the original complaint, the amended complaint has not been screened in accordance with 28 U.S.C. § 1915A. The Court offers no opinion as to the merits of the claims.

grievances, and the BP-10 and BP-11 regional and national appeal forms do not require that the claims be restated and, therefore, he has exhausted administrative remedies.  (Docs. 35 and 43.)

## 1.  The Relevant Legal Principles

Plaintiff's claims are subject to the exhaustion requirement set forth in 42 U.S.C. § 1997e(a):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Perez v. Wisconsin Department of Corrections*, 182 F.3d 532 (7th Cir.1999), clarified that exhaustion of administrative remedies under § 1997e(a)– while not jurisdictional *per se*– is a "precondition" to suit, regardless of the apparent futility of pursuing an administrative remedy, regardless of whether money damages are sought as a tangential remedy, and regardless of notions of judicial economy. The exhaustion requirement applies to all claims "about prison life." *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

Significantly, exhaustion of administrative remedies is required *before* a case may be brought, even if exhaustion is accomplished during pendency of the case.  *See* 42 U.S.C. § 1997e(a); *Perez,* 182 F.3d at 535-536.  In other words, an inmate cannot file suit and then exhaust his administrative remedies while suit is pending.  *Ford v. Johnson,* 362 F.3d 395, 398 (7th Cir. 2004).  The Supreme Court has held that exhaustion means "proper exhaustion," that is, the inmate must file a timely grievance using the procedures put in place by the prison system, properly taking each step in the process.  *Woodford v. Ngo,* 548 U.S. 81 (2006); *Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir. 2002).  And the law of the Seventh Circuit

emphasizes that the purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims administratively/internally, prior to federal litigation.  Only when that is done has the prisoner properly exhausted all available remedies.  *See, e.g., Kaba v. Stepp,* 458 F.3d 678, 684 (7th Cir. 2006); *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006); *see also Porter v. Nussle,* 534 U.S. 516, 524-525(2002).

The Bureau of Prisons has a detailed administrative remedy procedure through which inmates may lodge complaints relating to any aspect of their confinement.  This multi-step process is set forth in the Code of Federal Regulations at 28 C.F.R. § 542.10- § 542.18.  *See Kaba,* 458 F.3d at 681 (7th Cir. 2006) (each step of the process has a "prescribed deadline and a particular grievance form" which must be used).

First, the inmate must attempt to informally resolve his complaint by presenting the issue to staff, "and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy."  28 C.F.R. § 542.13.   A "BP-8" form is used for this step.  Second, if informal efforts fail, the inmate may file a formal complaint with the Warden (on form "BP-9") within 20 days of the date on which the complained-of activity occurred.  Additional time is allowed for this step, if the inmate demonstrates a valid reason for delay.  28 C.F.R. **§** 542.14.  The Warden has 20 days to respond to the inmate's complaint.  *Id.*

If the inmate is dissatisfied with the Warden's response, he can appeal to the Regional Director/Regional Office using a "BP-10" form, submitted "within 20 calendar days of the date the Warden signed the response."  28 C.F.R. § 542.15.  The Regional Director then has 30 days to respond.

If the inmate is not satisfied with the Regional Director's response, "within 30 calendar

days of the date the Regional Director signed the response," the inmate can file a final appeal

with the General Counsel, using a "BP-11" form,  mailed to the National Inmate Appeals

Administrator, Office of General Counsel.  28 C.F.R. § 542.15 and § 542.18.  The inmate's

receipt of the General Counsel's response to his BP-11 completes the administrative process.

Failure to exhaust administrative remedies is an affirmative defense; the defendant

correctional officials have the burden of proving that the inmate had available remedies that he

did not utilize.  *See, e.g., Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006); *Dale v. Lappin,*

376 F.3d 652, 655 (7th Cir. 2004).  A remedy is "available" if the administrative procedure can

lead to some relief, even if it is not the precise relief the inmate wants.  *See Booth v. Churner,*

532 U.S. 731, 741 and f n. 6 (2001); *Larkin v. Galloway,* 266 F.3d 718, 723 (7th Cir. 2001).

"Prison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy

becomes 'unavailable' if prison employees do not respond to a properly filed grievance or

otherwise use *affirmative misconduct* to prevent a prisoner from exhausting."  *Dole v. Chandler,*

438 F.3d 804, 809 (7th Cir. 2006) (emphasis added) (citing *Lewis v. Washington,* 300 F.3d 829,

833 (7th Cir. 2002); and *Dale v. Lappin,* 376 F.3d 652, 656 (7th Cir. 2004).

In  *Pavey v. Conley,* 544 F.3d 739 (7th Cir. 2008), the Seventh Circuit delineated a three-

step process for cases in which exhaustion is contested.

> (1) The district judge conducts a hearing on exhaustion and permits whatever
> discovery relating to exhaustion he deems appropriate. (2) If the judge determines
> that the prisoner did not exhaust his administrative remedies, the judge will then
> determine whether (a) the plaintiff has failed to exhaust his administrative
> remedies, and so he must go back and exhaust; (b) or, although he has no
> unexhausted administrative remedies, the failure to exhaust was innocent (as
> where prison officials prevent a prisoner from exhausting his remedies), and so he
> must be given another chance to exhaust (provided that there exist remedies that
> he will be permitted by the prison authorities to exhaust, so that he's not just being
> given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which

5

event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

### 2.  The Evidence Proffered and Proposed Findings of Fact

An evidentiary hearing was not conducted because there are no material questions of fact relative to the exhaustion issue to be resolved; a decision can be made as a matter of law, viewing the evidence in the light most favorable to plaintiff.

In his amended complaint, plaintiff asserts that he did exhaust administrative remedies. (Doc. 31, p. 10.)  The defendants have submitted a list of all 80 administrative remedy submissions by plaintiff, as tracked in the BOP's computerized database, as well as copies of all documentation of 11 specific grievances filed after July 29, 2006, which could have possibly been used to exhaust administrative remedies prior to October 14, 2008, when this action was initiated.  (Docs. 33-1– 33-4.)  The documentary evidence is <u>undisputed</u>.  The parties only dispute whether the steps taken by plaintiff fulfill the exhaustion requirement.  Therefore, this Court's findings of fact will be limited to the 11 relevant grievances and pertinent aspects of the various BOP forms and procedural requirements.  Each possibly relevant grievance is summarized below, with respect to references to the individuals and claims specified in the complaint.

### A.  The Forms

6

The BP-9 "Request for Administrative Remedy" form is simplistic, providing a space to write, date and sign the "Inmate Request," and further including a space for the response, and a receipt portion. (*See* Doc. 33-4, p. 3.) A "Regional Administrative Remedy Appeal" BP-10 form directs the inmate to attach a copy of the BP-9 with the appeal, and has a section for the inmate to set forth, sign and date the "Reason for Appeal." (*See* Doc. 33-4, p. 26.) The BP-11 "Central Office Administrative Remedy Appeal" form directs the inmate to attach copies of the BP-9 and BP-10 with the appeal, and has a section for the inmate to set forth, sign and date the "Reason for Appeal." (*See* Doc. 33-4, p. 7.) Neither the forms nor the aforementioned regulations contain a specificity requirement.

### B.  Administrative Remedy 422940 (Doc. 33-4, pp. 3-8)

Request for Administrative Remedy 422940 was initiated via BP-9 on August 7, 2006. Plaintiff complained of being placed in a dry cell from July 29 through August 3, 2006. The grievance further states that defendant Petty told plaintiff that "this is payback time," and references Petty being a defendant in an earlier lawsuit. The BP-9 states that plaintiff is requesting a clothing exchange. The BP-9 also broadly states, "This is Retaliation." These issues were acknowledged in Warden Revell's response.

Plaintiff's August 30, 2006, BP-10 Regional Appeal does not reiterate the claims, but does generally complain about continued placement in a dry cell. The BP-10 concludes by requesting restoration of  visitation and telephone privileges. The Regional Director's response, in apparent recognition of the BP-9, acknowledges the claim of retaliation, states that the Warden's response had been reviewed and claims discussed and investigated. The BP-11 final appeal again references placement in a dry cell and loss of visitation. The National

7

Administrator's response discusses placement in a dry cell, retaliation, visitation and clothing exchange.

### C.  Administrative Remedy 422941 (Doc. 33-4, pp. 24-29)

On or about August 7, 2010, plaintiff submitted a second BP-9 requesting restoration of his recreation, visitation and telephone privileges while in the SHU, and his not having a "lock up order."  Warden Revell responded by explaining that plaintiff was under investigation for violating telephone and visitation privileges; she also explained that records reflected that plaintiff had been permitted to recreate while in the SHU; therefore, the request for remedy was denied.

Plaintiff's BP-10 intermediate appeal notes that the Warden did not address his placement in a dry cell from July 29 through August 2, 2006.  The BP-10 claims retaliation and goes on to take issue with the allegations that plaintiff abused privileges.  The Regional Director recognized that plaintiff was grieving his placement in the SHU, loss of telephone and visitation privileges, and the allegation of retaliation.  Plaintiff was informed that at the conclusion of the investigation a decision would be made regarding the reinstatement of his telephone and visitation privileges.

Plaintiff's BP-11 final appeal explains that he originally lost privileges and was placed in a dry cell on July 29, 2006, and subsequently placed under investigation.  Plaintiff notes that he has an ongoing lawsuit against the Warden and an SIS Officer.  The National Administrator construed the grievance and appeal as claiming that plaintiff was placed in the SHU and denied telephone and visitation privileges in retaliation for a lawsuit.

8

### D.  Administrative Remedy 423918 (Doc. 33-4, pp. 31-35)

On August 14, 2006, plaintiff submitted a BP-9 Request for Administrative Remedy requesting information, law or policy regarding why he was placed in a dry cell from July 29 through August 3, 2006.  The BP-9 also asked that an SIS Officer other than defendant Gelios handle the investigation, because plaintiff had a lawsuit pending against Gelios.  In the BP-9 plaintiff also requested restoration of his telephone and visitation privileges, and an explanation of the policy that permits the Warden or Gelios to take away those privileges.  Plaintiff also makes a broad statement that retaliation is being exhibited.  In response, Warden Revell explained that plaintiff was being held pending an investigation into whether plaintiff had swallowed a balloon containing drugs.  The Warden noted that the denial of telephone and visitation privileges was the subject of Remedy 422941.  The Warden made no mention of retaliation.

Plaintiff's BP-10 intermediate appeal again requested information regarding why he had been placed in a dry cell in July 2006.  Plaintiff claimed Warden Revell and SIS Officer Gelios were retaliating against him for having filed a lawsuit against them by placing him in a dry cell, investigating him and taking away his telephone and other privileges.  The Regional Director responded that the investigation for introduction of contraband was ongoing.  The Regional Director also acknowledged that plaintiff was claiming retaliation, but he otherwise did not specifically address that issue, except to generally state that further response to the grievance and appeal would have to wait until the investigation was concluded.

No BP-11 final appeal was filed by plaintiff.

### E.  Administrative Remedy 424597 (Doc. 33-4, pp. 10-15)

Plaintiff's August 16, 2006, BP-9 pertains to the loss of visitation and telephone privileges after plaintiff was placed in a dry cell.  Warden Revell replied that an investigation into plaintiff's placement in the SHU was ongoing, and that issues regarding visitation and telephone privileges had been addressed in connection with Remedy 422941; therefore, the grievance was denied as repetitive.  Plaintiff's BP-10 appeal generally mirrored the BP-9, and the Regional Director's response essentially adopted the Warden's previous response.  Plaintiff's BP-11 final appeal again reiterates the grievance regarding placement in a dry cell and losing visitation and telephone privileges; plaintiff also interjects an allegation of retaliation.  The National Administrator recognized all of the issues, including the retaliation claim, and deemed the grievance repetitive of Remedy 422941.

### F.  Administrative Remedy 424610 (Doc. 33-4, pp. 17-22)

On August 16, 2006, plaintiff lodged a second BP-9, but it merely requested an explanation in writing for plaintiff being "locked up."   Warden Revell replied that an investigation of plaintiff's status in the SHU was ongoing.  The BP-10 intermediate appeal generally presented argument regarding plaintiff having previously been told varying reasons for his being in a dry cell and in the SHU.  The Regional Director's reply set forth a few reasons plaintiff was being investigated and stated that the investigation was ongoing.  The BP-11 appeal mentioned retaliation, and plaintiff still being without visitation and telephone privileges.  The National Administrator explained the various reasons for plaintiff's placement in the SHU, and asserted that the conditions within the SHU were consistent with regulations.  In closing, the National Administrator stated, "Inasmuch as you request no specific relief in this Appeal, this response is for informational purposes only."

10

### G.  Administrative Remedy 427683 (Doc. 33-5, pp. 7-11)

On September 16, 2006, plaintiff filed a BP-9, but none of the issues in this action were raised.  The BP-9 inquires why plaintiff  had multiple urine tests, and asserted that staff was retaliating.  Warden Revell responded that one of the reasons for multiple tests was that plaintiff had been placed in a dry cell in July 2006 due to suspected introduction, so three months of testing should be anticipated.  No appeals were filed.

### H.  Administrative Remedy 429056 (Doc. 33-5, pp. 2-5)

On September 27, 2006, plaintiff filed a BP-9 Request for Administrative Remedy questioning why he had been placed in the SHU in protective custody, which entailed losing telephone and visitation privileges.  The BP-9 asserts that plaintiff has been subjected to retaliation by SIS Officer Gelios due to plaintiff's pending lawsuit. Warden Revell responded that an investigation was ongoing, and that the suspension of privileges had previously been addressed relative to Remedies 42291 and 424597.  The request was denied as repetitive. Plaintiff filed a BP-10 intermediate appeal generally reiterating the issues in his grievance.  The Regional Director indicated there was an ongoing investigation, and otherwise found the privilege issues to be repetitive of Regional Administrative Remedy Appeals 422941, 424597 and 423918.  No BP-11 final appeal was lodged by plaintiff.

### I.  Administrative Remedy 433655 (Doc. 33-5, pp. 18-21)

On November 9, 2006, plaintiff lodged a BP-9, requesting restoration of his telephone

and visitation privileges.  Plaintiff also asked for a written explanation of why he was being held

in the SHU.  Warden Revell replied that there was an ongoing investigation into his placement in

the SHU, and plaintiff's telephone and visitation privileges were the subject of Remedies 422941

and 424597.  The request was denied as repetitive.  Plaintiff filed a BP-10 intermediate appeal in

which he observed that he keeps being told that his grievances are repetitive and that he is under

investigation, to no end.  The Regional Director responded by stating that plaintiff's privileges

had been suspended while he was under investigation, but the investigation had been concluded

and a final decision regarding his privileges would be forthcoming.  No BP-11 final appeal was

filed.

### J.  Administrative Remedy 433656 (Doc. 33-5, pp. 23-26)

On November 9, 2006, plaintiff filed a second BP-9.  The BP-9 and a subsequent BP-10

intermediate appeal are barely legible.  The BP-9 appears to reference a clothing exchange

incident with defendant Braning, and complaints about meals and mail.  In any event, no BP-11

final appeal was filed.

### K.  Administrative Remedy 433658 (Doc. 33-5, pp. 13-16)

On November 9, 2006, plaintiff filed a third BP-9 Request for Administrative Remedy

regarding defendant Braning returning an allegedly dirty shirt to plaintiff during a clothing

exchange.  Warden Revell replied that the clothing issue had been referred for investigation, and

personnel issues would not discussed further with the inmate.  Plaintiff filed a BP-10

intermediate appeal in which he noted that Braning was a defendant to a lawsuit plaintiff had

filed.  The Regional Director's response reflects that the grievance being appealed was perceived

as pertaining to staff acting unprofessionally.  Plaintiff did not pursue a BP-11 final appeal.

**L.  Administrative Remedy 436329 (Doc. 33-5, pp. 28-31)**

Plaintiff filed a BP-9 Request for Administrative Remedy on December 10, 2006, noting that plaintiff had been told that the investigation related to his placement in the SHU and the suspension of privileges had been completed and that a final decision would be forthcoming. The BP-9 requested that a special visit with his family set up and would like one as soon as possible, because plaintiff had not seen his family in five months.  In response, Warden Revell explained that plaintiff's privileges had been suspended while he was under investigation, and since plaintiff had been transferred to a different prison just days earlier, his visiting privileges were now at the discretion of the new institution.  Plaintiff did not pursue any appeal.

**3.  Analysis and Conclusions of Law**

The way the defendants' motions are framed is somewhat misleading relative to the claims in the amended complaint, not recognizing all claims.  Therefore, this Court will go to greater length than would otherwise be necessary in order to compare and contrast the claims in the amended complaint to the grievances.

**A.  Relevant Requests for Administrative Remedy**

Of the 11 Requests for Remedy detailed above, seven were procedurally defaulted because plaintiff did not pursue the full administrative review process, leaving only two relevant Requests for Administrative Remedy.

The multi-step administrative remedy process is prescribed at 28 C.F.R. § 542.10- § 542.18.  The Supreme Court has held that exhaustion means "proper exhaustion," that is, the inmate must file a timely grievance using the procedures put in place by the prison system,

properly taking each step in the process.  *Woodford v. Ngo,* 548 U.S. 81 (2006); *Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir. 2002).  Plaintiff has not so much as implied that his attempts to pursue Remedies 423918, 427683, 429056, 433655, 433656, 433658 and 436329 through all three stages was impeded.  The failure to exhaust those seven Requests for Administrative Remedy is wholly attributable to plaintiff.  Consequently, Remedies 423918, 427683, 429056, 433655, 433656, 433658 and 436329 cannot serve to satisfy the exhaustion requirement, which is a precondition for this action.

Remedy 424160 did not request a remedy per se; rather, it asked only for an explanation of why plaintiff was "locked up.  The National Director made that clear in his response, in effect precluding the completion of the final step in the administrative process.  Therefore, although plaintiff presented the request to all administrative levels, that request cannot be used to satisfy the exhaustion requirement– it was not truly a request for an administrative remedy.  In any event, insofar as the grievance about "lock up" could be construed as seeking a remedy, as discussed below, Remedy 422940 more thoroughly addresses plaintiff's placement in a dry cell, and Remedy 422941 addresses his placement in the SHU.

Remedy 424597 was pursued through the full administrative process, but at each level it was rejected as being repetitive of Remedy 422941.  A comparison of the two BP-9 forms reveals that Remedy 422941 clearly contains more detail and covers more of the issues than Remedy 424597.  Thus, it is to plaintiff's benefit to have the Court focus on Remedy 422941 relative to the question of exhaustion.  Further discussion of Remedy 424597 will not be offered.

Of the 11 potentially relevant Requests for Administrative Remedy filed by plaintiff, only Remedies 422940 and 424610 could potentially serve to satisfy the exhaustion requirement vis-

14

a-vis the claims in the amended complaint and because they were pursued through all steps in the administrative process.

## B.  The Conditions of Confinement Claims

The amended complaint alleges that between July 29 and August 3, 2006, plaintiff was placed in a "dry cell," and thereafter placed in solitary confinement ("the SHU") and subjected to conditions of confinement constituting cruel and unusual punishment in violation of the Eighth Amendment.  Specific to the dry cell, plaintiff complains of being without clothing, bedding, personal hygiene items, mail and visitation, and that the cell was frigid and unsanitary.  (Doc. 31, p. 6, ¶¶ 1-3.)  Relative to the SHU solitary cell, plaintiff alleges that he was without telephone and visitation privileges.  (Doc. 31, p. 6, ¶¶ 5-6.)  Plaintiff further specifies that defendant Petty removed all clothing items, hygiene products and commissary items from the SHU cell.  (Doc. 31, p. 6, ¶ 7.)  Defendant Braning allegedly refused to replace clothing items during the clothing exchange, and denied plaintiff adequate cold weather apparel.  (Doc. 31, pp. 6-7, ¶ 8.)  Plaintiff further alleges that "Officer's [sic] in the SHU" did not properly process plaintiff's personal and legal mail.  (Doc. 31, p. 7, ¶ 13.)

### i.  The Dry Cell

BP-9 Remedy 422940 complains of placement in the dry cell and being denied a "clothing exchange."  Although Remedy 422940 also pertained to certain personal items being confiscated– tissue, books and sugar packs– there is no mention of personal hygiene items or mail.  Similarly, there is no mention of bedding, loss of visitation or the dry cell being frigid and unsanitary.  (Doc. 33-4, p. 3.)   The BP-10 intermediate appeal complains of placement in a dry cell, but no other specific complaints are made, except that plaintiff requests that his telephone

15

and visitation privileges be restored.  (Doc. 33-4, p. 4.)  The Regional Director recognized and did not reject the addition of the request for a remedy regarding telephone and visitation privileges.  (Doc. 33-4, p. 6.)  Similarly, on final appeal, the National Administrator recognized that plaintiff was seeking a remedy relative to clothing exchange, and the loss of telephone and visitation privileges.  (Doc. 33-4, p. 8.)

Ideally, the same issues would be presented in the initial BP-9 Request for Administrative Remedy and the subsequent BP-10 and BP-11 appeals, but the regulations do not specifically require that consistency, and as plaintiff argues, the BP-10 and BP-11 forms do not request that the remedy be restated; the forms request only the "reason for appeal," and require copies of the preceding administrative documents (the BP-9 and/or BP-10).  In a situation such as this, where there is no specificity requirement and where the issues being complained of were presented to and acknowledged by the highest administrative level, this Court concludes that any procedural flaws were waived and that administrative remedies relative to those issues have been exhausted.

Therefore, for the aforestated reasons, the issues of plaintiff being denied clothing exchange and visitation while in the dry cell have been exhausted.  Although plaintiff exhausted remedies regarding the denial of telephone privileges while in the dry cell, that issue is not alleged in the amended complaint relative to the dry cell.  All other conditions of confinement in the dry cell alleged in the amended complaint-- that while in the dry cell plaintiff's  bedding, personal hygiene items and mail were withheld, and that the cell was frigid and unsanitary– were not pursued through the final step in the administrative process and therefore must be dismissed without prejudice.

16

As already noted, the administrative remedy procedures and forms do not require any particular degree of specificity.  Therefore, the fact that no defendant is identified in the grievance process as causing the contested conditions of confinement does not mean that plaintiff has failed to exhaust administrative remedies. The amended complaint speaks of "the defendants" and "they" causing the offensive conditions of confinement.  (Doc. 31, p. 6, ¶¶1-3.)

### ii. The SHU Solitary Cell

### a.  General Claims

Relative to the general claim (as to all defendants) that plaintiff was denied telephone and visitation privileges in the SHU, the BP-9 Request for Administrative Remedy 422941 specifically raises those issues.  (Doc. 33-4, p. 24.)  Those two issues were also addressed by the Regional Director in the  intermediate appeal and by the National Administrator in the final appeal.  (Doc. 33-4, pp. 27 and 29.)  Again, because plaintiff's request for remedy regarding restoration of his telephone and visitation privileges was presented via the BP-9 and specifically addressed by prison officials at each level of the administrative process, any argument that the issues were not properly presented is waived.  Therefore, plaintiff has exhausted administrative remedies regarding telephone and visitation privileges in the SHU.

Plaintiff's claim that "Officer's [sic] in the SHU" tampered with his legal mail while he was in the SHU was not raised in BP-9 Request for Administrative Remedy 422941, nor in either of his appeals.  (*See* Doc. 33-4, pp. 24-29.)  Therefore, administrative remedies have not been exhausted relative to that claim and it should be dismissed without prejudice.

### b.  Defendant Petty

Plaintiff's BP-9 Request for Remedy 422941 and the BP-10 and BP-11 appeals do not pertain to defendant Petty, or any allegations regarding the removal of clothing, hygiene products and commissary items from the <u>SHU</u> cell[5], as alleged in the amended complaint.  (*See* Doc. 33-4, pp. 24-29.)  Therefore, administrative remedies have not been exhausted relative to those claims and they should be dismissed without prejudice.

### c.  Defendant Braning

Plaintiff's BP-9 Request for Remedy 422941 and the BP-10 and BP-11 appeals do not pertain to defendant Braning, or any allegations regarding clothing, or adequate cold weather apparel, as alleged in the amended complaint.  (*See* Doc. 33-4, pp. 24-29.)  Therefore, administrative remedies have not been exhausted relative to those claims and they should be dismissed without prejudice.

### C.  The Retaliation Claims

The amended complaint alleges that, in retaliation for having filed suit against defendants Harry G. Lappin, C/O Petty, M. Gelios, D. Braning and Sara Revell in *Johnson v. Lappin*, Case No. 05-900-MJR (S.D.Ill. filed Dec. 22, 2005, judgment for defendants Jan. 29, 2009, appeal dismissed July 2, 2009), plaintiff was placed in a dry cell from July 29 through August 3, 2006, and subsequently in a SHU solitary cell, under the conditions of confinement addressed above.[6]

---

[5]

[6]This Court construes the amended complaint the same way the District Court construed the original complaint in the threshold order (Doc. 11)– limiting the broad retaliation claim to the allegedly unjustified placement in the dry cell and SHU solitary cell, not the conditions of the cell.  However, this Court also recognizes allegations of retaliation specifically regarding defendants Petty, Braning and Gelios.

(Doc. 31, pp. 5-6, ¶¶ 1-5, p. 7, ¶¶ 12 and 14.)  The amended complaint also alleges that, while plaintiff was in the SHU, defendant Petty threatened plaintiff by saying "I told you we gone get you" [sic].  (Doc. 31, p. 6, ¶7.)  Defendant Braning allegedly " verbally threatened" plaintiff. (Doc. 31, pp. 6-7, ¶ 8.)  And, it is alleged that defendant Gelios threatened plaintiff with "more abuse" unless plaintiff "stopped filing."  (Doc. 31, p. 7, ¶ 10.)

### i.  Cell Placement

Request for Administrative Remedy No. 422940, read as a whole, alleges that plaintiff was placed in a dry cell in retaliation for a lawsuit filed earlier in the year, of which "staff" was familiar.  (Doc. 33-4, p. 3.)  That broad issue of retaliation was also recognized by the Regional Director relative to the BP-10.  (Doc. 33-4, p. 6.)  The more specific issue of retaliatory placement in a dry cell was recognized by the National Administrator relative to the BP-11. (Doc. 33-4, p. 8.)  Therefore, administrative remedies relative to a broad claim of retaliatory placement in a dry cell have been exhausted as to all defendants.

Request for Administrative Remedy No. 422941 does not allege retaliatory placement in the SHU solitary cell.  (Doc. 33-4, p. 24.)  However, the Regional Director subsequently construed plaintiff's BP-10 appeal as including a claim that plaintiff had been placed in the SHU in retaliation for a lawsuit plaintiff had filed.  (Doc. 33-4, p. 27.) Similarly, the National Administrator recognized that plaintiff was seeking redress for retaliatory placement in the SHU. (Doc. 33-4, p. 29.)  By recognizing and addressing the retaliatory placement in the SHU at the final stage in the administrative process, all procedural objections are deemed waived. Therefore, administrative remedies relative to the claim of retaliatory placement in the SHU have been exhausted as to all defendants.

### ii.  Defendant Petty

No further discussion regarding Petty's alleged threatening statement  "I told you we gone get you" [sic] is necessary, because the general claims about retaliatory placement in the dry cell and SHU solitary cell have been deemed exhausted as to all defendants.  Defendant Petty would obviously be included, since the administrative procedures do not require any degree of specificity.

### iii.  Defendants Braning and Gelios

The alleged amorphous threats by Braning and Gelios cannot reasonably be construed as linking those defendants to any particular retaliatory acts beyond the general claims about conditions of confinement and retaliatory cell placement already discussed above.  Therefore, no further discussion is warranted.

## <u>RECOMMENDATION</u>

For the aforestated reasons, it is the recommendation of this Court that the defendants' motions for summary judgment (Docs. 33 and 40) be granted in part and denied in part.  More specifically, this Court recommends:

1.   The issues of plaintiff being denied clothing exchange and visitation while in the dry cell should be deemed exhausted and should proceed; all other claims regarding conditions of confinement in the dry cell (the denial of bedding, personal hygiene items and mail, and that the cell was frigid and unsanitary) should be deemed not to have been exhausted and should dismissed without prejudice;

2.   The claims regarding telephone and visitation privileges in the SHU should be deemed exhausted and should proceed; claims that "Officer's [sic] in the SHU" tampered with plaintiff's legal mail while plaintiff was in the SHU should be deemed not to have been exhausted and should be dismissed without prejudice;

3.   Claims relative to defendant Petty and the removal of clothing, hygiene products and commissary items from plaintiff's should be deemed not to have been exhausted and should be dismissed without prejudice;

4.   Claims relative to defendant Braning and clothing or adequate cold weather apparel should be deemed not to have been exhausted and should be dismissed without prejudice;

5.   The broad claim of retaliatory placement in a dry cell should be deemed exhausted as to all defendants and should proceed;

6.   The broad claim of retaliatory placement in the SHU should be deemed exhausted as to all defendants and should proceed.

**DATED: December 10, 2010**

**s/ Clifford J. Proud**

**CLIFFORD J. PROUD**

**U. S. MAGISTRATE JUDGE**

## **<u>Notice of Response Deadline</u>**

     In accordance with 28 U.S.C. § 636(b), Local Rule 73.1(b), and Federal Rule of Civil Procedure 6, the parties shall file any objections to this report and recommendation on or before December 27, 2010.